UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

_____
                                    )
SAMUEL DIAZ,                        )
                                    )
        Plaintiff,                  )
                                    )
    v.                              )   C.A. No. 17-94 WES
                                    )
ASHBEL T. WALL, et al.,             )
                                    )
        Defendants.                 )
_____)

**ORDER**

WILLIAM E. SMITH, Chief Judge.

On February 12, 2018, Magistrate Judge Patricia A. Sullivan filed a Report and Recommendation ("R&R") (ECF No. 40) recommending that the Court grant in part and deny in part Defendants' Motion To Dismiss (ECF No. 35). After carefully reviewing the R&R and the relevant papers, and having heard no objections, the Court ACCEPTS the R&R in its entirety and adopts the reasoning set forth therein. Accordingly, Defendants' Motion To Dismiss is GRANTED in part and DENIED in part, as outlined by Magistrate Judge Sullivan, see R. & R. 18-19.

IT IS SO ORDERED.

_____
William E. Smith
Chief Judge
Date: March 8, 2018

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

SAMUEL DIAZ, :
    Plaintiff, :
    :
v. : C.A. No. 17-94WES
    :
ASHBEL T. WALL, et al., :
    Defendants. :

## REPORT AND RECOMMENDATION

PATRICIA A. SULLIVAN, United States Magistrate Judge.

In a hand-written complaint that is very difficult to decipher or understand, *pro se* Plaintiff Samuel Diaz, a prisoner at the Adult Correctional Institutions ("ACI"), has sued eleven employees of the Rhode Island Department of Corrections ("RIDOC"), all but one in both their individual and official capacities ("Defendants").[1] Plaintiff's allegations loosely fall into three distinct claims. First, he alleges that, while incarcerated, he should have received medication for attention deficit disorder ("ADHD"). Second, he claims that, despite having serious mental illness, over many years while serving multiple short sentences at the ACI, he has persistently been held in excessively harsh disciplinary confinement for a substantial portion of the time incarcerated, which has exacerbated his mental illness. Third, he seeks damages for an incident at the ACI on November 23, 2016, when he alleges he was sprayed with "O.C.,"[2] forced to clean waste without proper gloves or cleaning products and left without a mattress for two days and

---

[1] As described by the complaint, Defendants are: A.T. Wall, Director of RIDOC; Matthew Kettle, Warden; Lieutenant Galligan; Dr. Cerbo, Mental Health Director; Linn Diggins, Mental Health; Correctional Officer Belisle; Deputy Jankowski; James Weeden, Assistant Director; Officer Calise; Lieutenant Sayles; and Captain Adams. ECF No. 1 at 2-5. All are sued in both the individual and official capacities except for Officer Calise, who is sued only in his individual capacity. See ECF No. 1 at 4. One defendant, identified in the complaint as Borigard, Doctor of Medications (also described as a psychiatrist), was named but not served. He is not a party to the case; process was returned unexecuted with the notation "does not work at ACI." ECF Nos. 1 at 5; 14-1.

[2] As clarified by Defendants, "O.C." refers to oleoresin capsicum, also known as "pepper spray."

without water for six.  For a remedy, Plaintiff asks the Court to award him compensatory damages for pain and suffering, and punitive damages for "every year that my life has gotten worse from these individuals not treating me, leading to a new injury I have to live with."[3]  ECF No. 1 at 8.  The complaint does not seek injunctive relief or a declaratory remedy.

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants' motion to dismiss challenges the viability of all of Plaintiff's claims against each of them, in both their individual and official capacities.  ECF No. 35.

## I.  Background

Plaintiff's pleading alleges that he has been in and out of the ACI since 2004 and that at least one of the sentences was for only six months.  ECF No. 1 at 16 ¶ 1; ECF No. 20 ¶ 2-3.  Mindful of the liberality and leniency required in reviewing and striving to understand Plaintiff's complaint, Rodi v. S. New England Sch. of Law, 389 F.3d 5, 13 (1st Cir. 2004), and because this criminal history is a matter of public record and is pertinent to the issues presented by Defendants' motion, I begin with a brief summary of the sentences that have resulted in the imposition of time to serve at the ACI.[4]

Plaintiff's first adult brush with the law appears to have occurred in 2004, when he got a thirty-day sentence for reckless driving.  In 2006, he received sentences of twenty-two and two

---

[3] In light of the Court's duty to read and interpret a *pro se* complaint with leniency, Instituto de Educacion Universal Corp. v. U.S. Dep't of Educ., 209 F.3d 18, 23 (1st Cir. 2000), I have corrected obvious errors in this and the other quoted excerpts from the pleading, including inconsistent spellings for the names of various defendants.

[4] This recitation of what is in the public record (accessed on February 5, 2018, at https://publicportal.courts.ri.gov/PublicPortal/Home/Dashboard/29) does not purport to be a complete statement of Plaintiff's criminal history.  Rather, I have included only sentences that reflect time "to serve," not the total sentence, and I have omitted convictions that did not appear to result in time to serve.  Nor does it reflect time actually served, which the public record does not reveal.  I include this incomplete information simply to clarify Plaintiff's otherwise confusing pleading; with this background from the public record, the complaint may be interpreted as alleging that Plaintiff has served many relatively short sentences since 2004, spending a significant portion of his adult life incarcerated despite never receiving a single long sentence.  See Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997) ("Our judicial system zealously guards the attempts of *pro se* litigants on their own behalf.  We are required to construe liberally a *pro se* complaint and may affirm its dismissal only if a plaintiff cannot prove any set of facts entitling him or her to relief.").

months respectively for breaking and entering and possession of controlled substance. In 2008 and again in 2009, he received sentences to serve of eighteen months and then one year for drug-related offenses. In 2012 and 2013, he received sentences of thirty months and one year for domestic assault, breaking and entering and possession of controlled substances. In 2015, he was sentenced to serve six months for domestic assault; while in 2016, he was sentenced to one-hundred eighty-one days for vandalism/domestic, eighteen months for threats to public officials, and twenty months for violation of a no-contact order. In 2017, he was sentenced to thirty days for driving without a license. In January 2018, he received a six-month sentence for possession with intent to deliver a controlled substance.

Plaintiff's in-and-out pattern of incarceration not only is material to the allegations in the complaint, but has also affected the travel of Defendants' motion to dismiss. The motion was initially filed by Defendant Calise only and served on Plaintiff at the ACI; however, three weeks prior, Plaintiff had been released from the ACI and had properly notified the Court of his change of address. ECF No. 33. Based on the failure properly to serve Plaintiff, the motion was denied without prejudice. ECF No. 34. On October 25, 2017, the motion to dismiss was refiled, this time on behalf of all Defendants, and was served on Plaintiff at his address in the community. ECF No. 35. Plaintiff failed to file a timely objection; however, shortly after the objection was due, Plaintiff notified the Court that he was back at the ACI. ECF No. 36. In light of the possibility that Plaintiff was unaware of the second motion to dismiss, despite its having been properly served on his address of record, the Court issued a show cause order, which was served on Plaintiff at the ACI. ECF No. 37. In his timely response filed on December 12, 2017, Plaintiff represented that he had not received the motion to dismiss but did intend to object. ECF No. 38. He also advised that he might be released again in as little as two weeks. Id. However,

this did not occur; on January 8, 2018, the Court received his one-sentence objection[5] sent from the ACI. ECF No. 39. As far as the Court's record reveals, Plaintiff remains incarcerated at the ACI.

## II. **Standard of Review**

Rule 12(b)(6) permits the Court to dismiss an action if it fails to state a claim upon which relief can be granted. Fantini v. Salem State College, 557 F.3d 22, 26 (1st Cir. 2009). To survive a motion to dismiss, a complaint must give the defendant fair notice of what the claim is and the grounds upon which it rests, and allege a plausible entitlement to relief. Bell Atl. Corp. v. Twombly, 550 U.S. 544-55, 559 (2007). A plaintiff must plead sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating a Fed. R. Civ. P. 12(b)(6) motion, the Court must accept as true all well-pled facts alleged in the complaint and draw all reasonable inferences in the pleader's favor. Rodriguez-Reyes v. Molina-Rodriguez, 711 F.3d 49, 53 (1st Cir. 2013). The Court need not credit bald assertions or unverifiable conclusions. Penalbert-Rosa v. Fortuno-Burset, 631 F.3d 592, 595 (1st Cir. 2011). A plaintiff's asserted facts must possess enough heft to show that he is entitled to relief. Twombly, 550 U.S. at 557. Nevertheless, when a plaintiff is *pro se*, the court must review his complaint with leniency. Rodi v, 389 F.3d at 13; Ahmed, 118 F.3d at 890.

Plaintiff's failure to file more than a cursory opposition to Defendants' motion to dismiss does not mean that the motion should be summarily granted because it is not opposed by well-developed legal arguments. Vega-Encarnacion v. Babilonia, 344 F.3d 37, 41 (1st Cir. 2003) ("If

---

[5] Plaintiff's objection, interpreted as stated in note 3, *supra*, provides simply: "Notice: I do and will object to the Defendants' [motion]; due to the pain & suffering, I still do want to file process of this case." ECF No. 39.

the merits are at issue, the mere fact that a motion to dismiss is unopposed does not relieve the district court of the obligation to examine the complaint itself to see whether it is formally sufficient to state a claim."). The Court must perform a substantive analysis to determine whether or not the complaint states a legally sufficient claim. That analysis follows.

### III. Facts and Analysis of Claims

#### A. Failure to Treat ADHD

In his complaint, Plaintiff alleges that, when he was first committed to the ACI on August 8, 2004, he notified staff that he had been diagnosed with ADHD as a child. ECF No. 1 at 16 ¶ 1. However, this information was not documented until 2012. ECF No. 1 at 16 ¶ 1. More recently, when he was seen by Dr. Cerbo, described in the complaint as RIDOC's director of mental health, Plaintiff claims he was told that he could not be treated with the medication he requested. ECF No. 1 at 16 ¶ 2. Plaintiff asserts he was denied medication because of Dr. Cerbo's failure to "check his history of illness" and that Dr. Cerbo's treatment fell below the standards of reasonable medical care. ECF No. 1 at 16-17. Relatedly, Captain Adams is charged with having learned of Plaintiff's ADHD diagnosis from Plaintiff's mother, but having failed to advise other ACI staff. ECF No. 1 at 26 ¶ 1. Finally, Plaintiff alleges that Director Wall is responsible for the denial of ADHD medication based on his overall responsibility for RIDOC, and that Assistant Director Weeden is responsible for not taking action regarding treatment of Plaintiff's ADHD over the course of thirteen years. ECF No. 1 at 20 ¶ 1; ECF No. 1 at 28 ¶ 1.

Read with liberality, Plaintiff's primary medically-based cause of action, asserted against Dr. Cerbo, amounts to a medical malpractice claim under state law based on an alleged breach of the duty to provide adequate medical care.[6] ECF No. 1 at 16-17 ¶¶ 5-6. Plaintiff alleges that Dr.

---

[6] I do not accept Defendants' argument that Dr. Cerbo is mentioned only in the heading of the pages pertinent to him, so that the complaint is devoid of factual allegations directed to him. ECF No. 35 at 11. Read with appropriate

Cerbo's care fell below the standard of reasonable medical practice, and that he failed to exercise ordinary skill, care and diligence. ECF No. 1 at 17 ¶¶ 6-9. It is well settled that a claim of medical negligence does not amount to an allegation of constitutional proportions. Wilson v. Seiter, 501 U.S. 294, 305 (1991) (mere negligence does not satisfy "deliberate indifference" standard). Thus, this claim fails to implicate the Eighth Amendment's prohibition against "cruel and unusual punishment," which is the proper source of federal jurisdiction over claims based on the constitutional entitlement to adequate medical treatment. Farmer v. Brennan, 511 U.S. 825, 832 (1994); Kosilek v. Spencer, 774 F.3d 63, 82 (1st Cir. 2014) (en banc), cert. denied, Kosilek v. O'Brien, 135 S. Ct. 2059 (2015); Martinez v. Blanchette, C.A. No. 14-537L, 2015 WL 9315562, at *2-4 (D.R.I. Oct. 29, 2015), adopted, 2015 WL 9412531 (D.R.I. Dec. 22, 2015). Consistent with this interpretation of the pleading, Plaintiff does not allege that any qualified physician, in or out of the ACI, prescribed medication for treating ADHD after he was a child;[7] nor does he claim that prescribed medication was denied by Defendants. Rather, he concedes that he was provided with mental health treatment but that the treating medical professional (Dr. Cerbo) advised that he "can't treat" Plaintiff with ADHD medication. ECF No. 1 at 16 ¶2. Further, the complaint specifically alleges that Plaintiff did receive other prescribed mental health medication. ECF No. 1 at 16 ¶ 4 (describing treatment with Zoloft).

With no viable federal question claim against Dr. Cerbo, this Court lacks jurisdiction over the allegations against him, pursuant to 28 U.S.C. § 1331; further, the complaint is devoid of any suggestion that diversity jurisdiction pursuant to 28 U.S.C. § 1332 might be available.

---

leniency, Instituto de Educacion Universal Corp., 209 F.3d at 23, the complaint is clear that Plaintiff charges Dr. Cerbo with all of the conduct alleged in the enumerated paragraphs on the pages headed with his name. ECF No. 1 at 16-17.

[7] The pleading makes clear that the ADHD diagnosis, including whatever medication was prescribed to treat it, was from "childhood." ECF No. 1 at 7; ECF No. 1 at 16 ¶ 1; ECF No. 1 at 18 ¶ 1.

However, there are other federal question claims that I recommend survive this motion to dismiss (discussed *infra*). If this recommendation is adopted, the Court must determine whether the potential medical malpractice claim against Dr. Cerbo, based on the failure to treat Plaintiff for ADHD in accordance with the applicable standard of care, may remain in federal court, consistent with the Court's exercise of supplemental jurisdiction. See United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966). Supplemental jurisdiction may be exercised over a state-law claim "whenever it is joined with a federal claim and the two claims 'derive from a common nucleus of operative fact' and the plaintiff 'would ordinarily be expected to try them both in one judicial proceeding.'" Vera–Lozano v. Int'l Broad., 50 F.3d 67, 70 (1st Cir.1995). Supplemental jurisdiction requires at least a "loose factual connection" between the federal and state claims. Ammerman v. Sween, 54 F.3d 423, 424 (7th Cir.1995). Whether to exercise supplemental jurisdiction lies within the broad discretion of the district court. Cruz-Caraballo v. Rodriguez, 113 F. Supp. 3d 484, 493 (D.P.R. 2014); Pejepscot Indus. Park, Inc. v. Maine Cent. R. Co., 281 F. Supp. 2d 311, 312 (D. Me. 2003).

Here, the potential medical malpractice claim against Dr. Cerbo would focus on the testimony of medical experts comparing Dr. Cerbo's treatment of Plaintiff, in terms of medications prescribed, with the applicable standard of care. These factual issues are totally unrelated to the factual allegations underpinning Plaintiff's other claims, which focus on the incident of November 23, 2016, and the conditions and duration of Plaintiff's disciplinary segregation.[8] Because Plaintiff's surviving federal claims and the medical malpractice claim

---

[8] To be clear, allegations about ADHD intertwine with the facts underlying the surviving claims (subject to the Court's adoption of the recommendation). Thus, Plaintiff asserts that the incident of November 23, 2016, began when he asked Officer Belisle to speak with "mental health" about his not being treated for ADHD with the medication he had received in childhood. ECF No. 1 at 18 ¶ 1. A closer question arises from Plaintiff's claim that he was exposed to excessive and inhumane segregation. This Eighth Amendment claim will require examination of whether repeated terms in solitary confinement amounts to cruel and unusual punishment when imposed on an individual suffering from diagnosed mental illness, placing in issue what were the mental health diagnoses known to

7

derive from very different sets of facts, they do not constitute "one constitutional case." Young v. Wall, 359 F. Supp. 2d 84, 94 (D.R.I. 2005). Accordingly, I recommend that this Court decline to exercise supplemental jurisdiction over the only claim against Dr. Cerbo and that it (and he) be dismissed from this case, without prejudice to an action being filed in state court.

The claim against Captain Adams for his failure to notify ACI staff that Plaintiff's mother had told him that Plaintiff had ADHD is equally unavailing. The gravamen of Plaintiff's medically-based cause of action is that ACI medical staff prescribed other medication for Plaintiff, instead of the medication he wanted. There is no suggestion that Plaintiff himself was prevented from telling ACI staff about his childhood ADHD diagnosis. Moreover, the complaint alleges that, by 2012, childhood ADHD had been documented by ACI staff. ECF No. 1 at 16 ¶ 1. No conceivable injury – never mind one of constitutional proportions – could flow from Captain Adams' omission to advise staff of this information from Plaintiff's mother. I recommend that this claim against Captain Adams be dismissed.

Finally, in addition to failing to state a viable federal claim, the ADHD medical treatment claims for damages against Director Wall and Assistant Director Weeden, acting in their official capacities, founder in the face of the well-established principle that "neither a state agency nor a state official acting in his official capacity may be sued for damages in a section 1983 action." Will v. Mich. Dept. of State Police, 491 U.S. 58, 70-71 (1989); Nieves-Marquez v. Puerto Rico, 353 F.3d 108, 124 (1st Cir. 2003) ("No cause of action for damages is stated under 42 U.S.C. § 1983 against a state, its agency, or its officials acting in an official capacity."). The medical treatment individual capacity claims against them also fail because the pleading alleges no direct

---

ACI officials. However, whether ACI staff knew or should have known of an ADHD diagnosis and how that knowledge should have affected the methods used to sanction his behavior involves a very different factual inquiry from a standard of case analysis in a medical malpractice case based on a specific physician's failure to prescribe a specific medication.

involvement on their part in the events that form the foundation for the claims. See Callahan v. Wall, C.A. No. 16-160 S, 2017 WL 3447895, at *4-5 (D.R.I. Aug. 11, 2017) (dismissing individual capacity claim of failure to provide health care against Director Wall due to lack of plausible facts permitting the inference that he was a direct participant in events on which claim was based). Because the pleading seeks only money damages, no claims remain against Director Wall and Assistant Director Weeden arising from Plaintiff's allegation that his medical treatment for ADHD did not meet the applicable standard of care.

Based on the foregoing, I recommend that all claims against Defendants Cerbo and all medical-treatment claims against Defendants Wall, Weeden and Adams be dismissed. The dismissal should be without prejudice to Plaintiff's ability to file a state-law medical malpractice claim against Dr. Cerbo in state court.

### B. Excessive Placement in Segregation

Far more serious than his ADHD claim is Plaintiff's allegation that, during his many sojourns at the ACI, he has spent a substantial portion of the time in "long-term" segregation, causing depression severe enough that he had to be treated with Zoloft. Read with leniency, Plaintiff's pleading alleges that so much segregation constitutes cruel and unusual punishment for an inmate with mental illness, and that RIDOC officials were deliberately indifferent to his plight. Specifically, Plaintiff plausibly asserts that he has been placed in segregation over thirty times for a total of five hundred fifty-five days[9] in order to sanction out-of-control behavior

---

[9] With no objection from Defendants, the Court permitted Plaintiff to file a copy of a RIDOC list of his infractions from August 2014 until April 2017 to clarify this aspect of his complaint. ECF No. 26-1. While it is unauthenticated and unexplained, this list appears to confirm that, during this slightly more than two-and-a-half year period, Plaintiff received thirty-nine "bookings," resulting in the imposition of between two and thirty days of disciplinary confinement each. Id. If this document is taken at face value, the total adds up to almost 700 days of segregation. However, some of the segregation appear to be for infractions on the same day; while it is impossible to ascertain whether such sentences were served concurrently or consecutively, if one assumes that same-day infractions resulting in multiple sanctions of segregation are all served concurrently, the total number of days still seems to exceed 500. For example, based on infractions dated November 23, 2016, Plaintiff appears to have

9

resulting from mental illness. ECF No. 1 at 20 ¶¶ 1-2. To illustrate, Plaintiff alleges that, in one instance in 2016, while serving a sentence of only six months, he received three "bookings" for a total of ninety days of segregation, meaning that half of his sentence was served in solitary confinement. ECF No. 1 at 20 ¶¶ 2-3. The complaint provides specifics regarding the conditions of these long-term stints in segregation: Plaintiff alleges that he was held in isolation for twenty-three hours a day; permitted one hour of daily exercise in the prison yard; limited to five showers a week; and denied privileges granted to the general population, such as the opportunity to work, have visitors and keep books. ECF No. 1 at 21. He claims that his mood disorder and depression have been exacerbated by so much solitary confinement. ECF No. 1 at 21 ¶¶ 8.

Plaintiff claims that Director Wall, Assistant Director Weeden, Deputy Jankowski, Captain Adams and Warden Kettle are the senior RIDOC officials responsible for creating the disciplinary regime that led to the imposition of so much solitary confinement for an inmate, serving relatively short sentences, without regard for the impact on his mental illness. ECF No. 1 at 20 ¶ 1; ECF No. 1 at 23 ¶ 2; ECF No. 1 at 26 ¶ 1; ECF No. 1 at 28 ¶ 1-2. He also charges that Lieutenant Galligan is responsible for placing him in segregation for long periods despite being aware of his mental illness. ECF No. 1 at 25 ¶¶ 1-4.

While Plaintiff's pleading is difficult to understand, at times bordering on incoherent, it sketches a troubling picture. As this Court recently held in <u>DuPonte v. Wall</u>, C.A. No. 17-397-JJM-LDA, 2018 WL 502742 (D.R.I. Jan. 22, 2018), overuse of excessively harsh solitary confinement may implicate the Eighth Amendment's prohibition on cruel and unusual

---

received a thirty-day sanction for disobeying a clearly-stated order and a fifteen-day (or thirty-day) sanction for disobeying a lawful order. ECF No. 26-1 at 7. It is not possible to determine whether segregation was imposed for a total of thirty days or forty-five days or sixty days. Nor is it possible to draw any conclusion about whether the two bookings were imposed for disobeying two discrete orders. Nevertheless, this document is sufficient to render plausible Plaintiff's allegation that he was repeatedly placed in long-term solitary confinement amounting to a substantial portion of the time spent incarcerated.

punishment because of the profound impact it can have on an individual's physical and mental health.[10]  Id. at *6.  Noting that the Eighth Amendment "draw[s] its meaning from evolving standards of decency that mark the progress of a maturing society," Rhodes v. Chapman, 452 U.S. 337, 346 (1981), DuPonte adverts to a growing body of documentation establishing that "prolonged solitary confinement produces numerous deleterious harms."  Id. at *7 (citing Glossip v. Gross, 135 S. Ct. 2726, 2765 (2015) (Breyer, J., dissenting));[11] see also Davis v. Ayala, 135 S. Ct. 2187, 2209 (2015) (Kennedy, J, concurring) ("The human toll wrought by extended terms of isolation long has been understood, and questioned, by writers and commentators.").  In the same vein, DuPonte references a recent Rhode Island legislative commission, on which Defendant Wall served as a member, that studied solitary confinement and the adverse mental health consequences it causes; on June 29, 2017, the commission issued a

---

[10] DuPonte also holds that a year of solitary confinement in conditions harsher than the conditions imposed in non-disciplinary settings in the same institution, at the pleading stage, implicates a protected liberty interest and permits a challenge to whether the due process provided to the inmate was adequate pursuant to Sandin v Conner, 515 U.S. 472 (1995).  DuPonte, 2018 WL 502742, at *4-5.  In this case, Plaintiff has not alleged that the process employed to impose each of the more than thirty bookings was inadequate.  Rather, he alleges that the imposition of so much segregation on a mentally ill prisoner serving relatively short sentences amounts to cruel and unusual punishment.

[11] In this dissent arising from a claim that the death penalty, as administered in Oklahoma, constitutes cruel and unusual punishment, Justice Breyer catalogued recent literature on the effects of lengthy solitary confinement as it is routinely imposed on inmates on death row:

> [N]early all death penalty States keep death row inmates in isolation for 22 or more hours per day. American Civil Liberties Union (ACLU), A Death Before Dying: Solitary Confinement on Death Row 5 (July 2013) (ACLU Report).  This occurs even though the ABA has suggested that death row inmates be housed in conditions similar to the general population, and the United Nations Special Rapporteur on Torture has called for a global ban on solitary confinement longer than 15 days.  See id., at 2, 4; ABA Standards for Criminal Justice: Treatment of Prisoners 6 (3d ed. 2011).  And it is well documented that such prolonged solitary confinement produces numerous deleterious harms.  See, e.g., Haney, Mental Health Issues in Long-Term Solitary and "Supermax" Confinement, 49 Crime & Delinquency 124, 130 (2003) (cataloguing studies finding that solitary confinement can cause prisoners to experience "anxiety, panic, rage, loss of control, paranoia, hallucinations, and self-mutilations," among many other symptoms); Grassian, Psychiatric Effects of Solitary Confinement, 22 Wash U. J. L. & Policy 325, 331 (2006) ("[E]ven a few days of solitary confinement will predictably shift the [brain's] electroencephalogram (EEG) pattern toward an abnormal pattern characteristic of stupor and delirium"); accord, In re Medley, 134 U.S. 160, 167-168 (1890); see also Davis v. Ayala, 135 S. Ct. 2187 (2015) (Kennedy, J., concurring).

Glossip v. Gross, 135 S. Ct. at 2765.

report that labeled solitary confinement as "dehumanizing" and recommended that it be limited to stints of fifteen days. 2018 WL 502742, at *7. Finding it plausible that RIDOC officials may be charged with knowledge of this growing body of public discourse regarding the deleterious effects of solitary confinement, DuPonte denied a motion to dismiss a complaint that otherwise lacked specific allegations that Director Wall and other senior RIDOC officials directly participated in the decision to discipline the plaintiff.[12] Id. at *7-8. The Court held that the DuPonte pleading plausibly alleged that senior RIDOC officials acted with deliberate indifference in creating and enforcing the disciplinary regime that sentenced the plaintiff to a year of segregation. Id.

At least one Court of Appeals has considered the Eighth Amendment implications of the use of many short stints in solitary confinement as a way to manage the behavior of a mentally ill inmate and held that, for pleading purposes, the practice may amount to a constitutional deprivation. Palakovic v. Wetzel, 854 F.3d 209, 229, 234 (3d Cir. 2017). In Palakovic, the Third Circuit vacated the Fed. R. Civ. P. 12(b)(6) dismissal of a claim by parents of a mentally ill prisoner who committed suicide after repeatedly being placed in solitary confinement for 30-day stints while serving thirteen-month sentence. Id. at 215-17. The court concluded that the use of solitary confinement as substitute for adequate mental health treatment stated a plausible claim under Eighth Amendment that "defendants had been deliberately indifferent to both inhumane conditions that [the prisoner] experienced while in solitary confinement and to [the prisoner's] serious medical need for mental healthcare." Id. at 218; see also United States v. D.W., 198 F. Supp. 3d 18, 93 (E.D.N.Y. 2016) (sentencing findings to guide Bureau of Prisons in how to treat

---

[12] DuPonte holds that the complaint plausibly stated an Eighth Amendment claim against Director Wall, Deputy Director Kettle and Warden Aceto, although it contained specific allegations only as to Lieutenant Oden and the classification panel chairperson, Jack Ward. Id. at *2, 7.

12

vulnerable defendant with documented mental illness; "[r]eliable studies show that inmates with pre-existing mental illnesses are likely to suffer the most severe consequences from isolation."); Peoples v. Annucci, 180 F. Supp. 3d 294, 297, 299 (S.D.N.Y. 2016) (approving class settlement of suit challenging solitary confinement practices in New York State prison system). Notably, in Peoples, the court held that the "consequences of long-term solitary confinement are so well-known that numerous medical associations . . . have all issued formal policy statements opposing the practice – especially with regard to mentally ill inmates, on whom the effects of solitary confinement are particularly pronounced." Id. at 299.

Guided by DuPonte, I find that Plaintiff has plausibly alleged, first, that he was subjected to amounts and conditions of solitary confinement that might be considered cruel and unusual; and, second, that these conditions were imposed on him by prison officials who were aware that prolonged solitary confinement could be deleterious to mental health, aware of his diagnosed mental illness, and aware that the repeated imposition of segregation meant that Plaintiff was in solitary confinement for significant portions of each of his relatively short prison sentences. See Cook v. Wall, C.A. No. 09-169S, 2013 WL 773444, at *2 (D.R.I. Feb. 28, 2013) (amount of segregation becomes more problematic as duration of underlying sentence decreases). I conclude that these allegations are sufficient to carry Plaintiff's Eighth Amendment claims past the pleading stage.

Accordingly, I recommend that the Court deny the motion of Defendants Director Wall,[13] Assistant Director Weeden, Deputy Jankowski, Captain Adams, Warden Kettle and Lieutenant

---

[13] Defendants argue that it is not clear whether Director Wall is sued in his individual capacity. ECF No. 35 at 7. I find no such ambiguity. Plaintiff plainly checked off both "Individual capacity" and "Official capacity" for his claims against Director Wall. ECF No. 1 at 2.

Galligan to dismiss Plaintiff's claim for damages[14] against them in their individual capacities based on the allegation that his rights under the Eighth Amendment were violated by the imposition of excessive and unduly harsh segregation. Because Plaintiff has not sought injunctive or declaratory remedies,[15] I recommend that the motion to dismiss the claims against these Defendants in their official capacities be granted. See Will, 491 U.S. at 70-71.

### C. November 23, 2016, Incident Involving Pepper Spray and Other Sanctions

Plaintiff's other plausible claim is based on an incident that began on November 23, 2016, when he asked Officer Belisle to speak to "mental health" about his ADHD and for the law cart. Plaintiff then reacted, presumably to Officer Belisle's unfavorable response, by kicking his cell door. ECF No. 1 at 18 ¶¶ 1-3. Officer Belisle riposted with pepper spray ("OC"), although Plaintiff claims he was in his cell and posed no threat to himself. ECF No. 1 at 18 ¶ 4. To remove the pepper spray, Plaintiff used water from the toilet because the water in his cell had been turned off. ECF No. 1 at 18 ¶ 5. Officer Belisle took Plaintiff to the showers and placed him in another cell; however, before the porter was able to clean Plaintiff's original cell of the waste, Officer Belisle returned Plaintiff to that cell and told him to clean it himself, without gloves or cleaning supplies. ECF No. 1 at 19 ¶¶ 6-8, 10. Further sanctions were imposed by Officer Belisle and approved by Lieutenant Galligan: Plaintiff's mattress was taken for two days

---

[14] Beyond the scope of the issues raised by Defendants' motion to dismiss is the impact of 42 U.S.C. § 1997e(e) on Plaintiff's ability to seek damages without evidence of a physical injury. See Williams v. Cutler, Docket No. 1:14-cv-539-NT, 2016 WL 1314630, at *7 (D. Me. Mar. 11, 2016) (no need to decide impact of § 1997e(e) on constitutional claim without physical injury at motion-to-dismiss phase as long as plaintiff seeks nominal and punitive damages).

[15] Plaintiff's failure to seek an injunction or a legal declaration is not surprising since, at the time Plaintiff filed his complaint, he expected to be released in a few months, which would have rendered moot a prayer for injunctive or declaratory relief. Callahan v. Wall, 2017 WL 3447895, at *5 (release from incarceration moots prayer for equitable remedy that was dependent on status as prisoner). However, consistent with the pattern since 2004, Plaintiff was quickly reincarcerated and remains so as of this writing. Based on his reincarceration, it is possible that Plaintiff could amend his complaint to add a claim for injunctive relief. If he succeeds in so doing, he could also ask the Court to amend his pleading to reinstate his official capacity claims against these officials.

and his water was left off for six days. ECF No. 1 at 19 ¶¶ 8-9; ECF No. 1 at 25 ¶ 1. Plaintiff also seems to allege that he received two disciplinary bookings for his conduct. ECF No. 1 at 19 ¶¶ 9-10. This allegation appears to be confirmed by the separately-filed RIDOC document, which reflects two bookings with an infraction date of November 23, 2016, for a total of possibly thirty, forty-five or sixty days in disciplinary confinement. ECF No. 26-1 at 7.

While the Constitution does not mandate comfortable prisons, it does not permit inhumane ones. Farmer v. Brennan, 511 U.S. at 832; Francisco v. U.S. Marshalls Serv., C.A. No. 11-231L, 2014 WL 652147, at *3 (D.R.I. Feb. 19, 2014). In evaluating whether prison officials' response to an inmate's misconduct violates constitutional norms, the core constitutional inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (*per curiam*). The use of excessive physical force against a prisoner may constitute cruel and unusual punishment in contravention of the Eighth Amendment even when the inmate does not suffer serious injury. Id. Thus, a complaint should not be dismissed if it plausibly alleges facts sufficient to permit the inference that pepper spray and other sanctions, compounded by the imposition of disciplinary confinement, were maliciously inflicted in retaliation for the claimant's challenge to a correctional officer's authority, and not as a reasonable and necessary response to misconduct. Francisco, 2014 WL 652147, at *6; see Walker v. Bowersox, 526 F.3d 1186, 1189 (8th Cir. 2008) ("jury issues as to whether, under the circumstances, defendant[]'s use of pepper spray was reasonable and in good faith"). Plaintiff's pleading is more than sufficient to give rise to this inference. See Francisco, 2014 WL 652147, at *7 (decision to leave claimant in restraints without a mattress throughout weekend and into Monday permits inference that this constituted wanton punishment).

15

Based on the foregoing, I recommend that the Court deny the motion to dismiss the individual capacity claims for damages against Officer Belisle and Lieutenant Galligan in connection with the November 23, 2016, incident and its aftermath. Because Plaintiff does not seek declaratory or injunctive relief against them, I recommend that the motion to dismiss Officer Belisle and Lieutenant Galligan in their official capacities be granted.

### D. Other Claims

Plaintiff has a potpourri of other claims scattered through his complaint.[16] These do not fare well.

The complaint includes several allegations focused on conduct discouraging or affecting Plaintiff's right to file a grievance or to access the court. For example, Plaintiff alleges that Lieutenant Sayles tried to justify what happened on November 23, 2016. ECF No. 1 at 22 ¶¶ 2-3. Relatedly, Plaintiff vaguely accuses Lieutenant Sayles and Deputy Jankowski of denying his right to file a grievance. ECF No. 1 at 22 ¶¶ 2-3; ECF No. 1 at 23 ¶ 3. Plaintiff also charges Correctional Officer Calise with denying him access to the law cart on March 1, 2017. ECF No. 1 at 24 ¶ 1.

It is well settled that a prisoner has no constitutional right of access to a grievance procedure, so that a prison official's failure to properly adhere to the grievance procedure does not state a claim of constitutional dimension. Baker v. Rexroad, 159 Fed. App'x 61, 62 (11th Cir. 2005); Patel v. Moron, 897 F.Supp.2d 389, 402 (E.D. N.C. 2012); Hollins v. Cross, No. 5:09CV63, 2010 WL 1066544, at *3 (N.D. W.Va. Mar.16, 2010). Nor does such a failure or refusal by prison officials deprive an inmate of meaningful access to the courts. Christensen v.

---

[16] In addition to the other miscellaneous claims, the complaint makes passing reference to the allegation that Plaintiff was denied by the police of "progressive for my domestic charge." ECF No. 1 at 20 ¶ 5; see ECF No. 1 at 23 ¶ 4; ECF No. 1 at 25 ¶ 3. To the extent that these references purport to state a claim, I recommend that they be dismissed as incomprehensible.

16

United States, Civ. No. 5:11-321-KKC, 2013 WL 4521040, at *9 (E.D. Ky. Aug. 26, 2013). In any event, to recover on a claim based on denial of access to the courts, a prisoner must demonstrate that he suffered an actual injury caused by a deprivation of that right, such as the inability to meet a filing deadline or present a claim. Lewis v. Casey, 518 U.S. 343, 351-52 (1996). Thus, Plaintiff's plaint about being denied the law cart on March 1, 2017, is plainly not actionable as Plaintiff succeeded in filing this lawsuit less than a week later.

The complaint also appears to charge Linn Diggins, alleged to work in "Mental Health," ECF No. 1 at 4, with speaking to Defendant about private matters while Correctional Officer Calise was nearby. ECF No. 1 at 7-8. A lenient reading of the pleading permits the inference that the conversation related to Plaintiff's mental health. However, the only federal statute to which Plaintiff alludes (the Health Insurance Portability and Accountability Act ("HIPAA")) does not support a private right of action. Roseberry v. Brown, No. 2:17-cv-0880 KJN P, 2017 WL 3840269, at *2 fn. 1 (E.D. Cal. Sept. 1, 2017) (HIPAA does not provide for private right of action; prisoner claim that nurse disclosed health care information to correctional officer dismissed); Walls v. Pierce Cty. Jail, No. C07-5153RJB, 2008 WL 1780933, at *5 (W.D. Wash. Apr. 16, 2008) (well settled law that HIPAA does not create private cause of action; prisoner's claim that nurse spoke in hearing of correctional officer rejected). Nor does it appear that any other constitutional deprivation is established by Defendant Diggins's alleged conduct. See Rodriguez v. Ames, 287 F. Supp. 2d 213, 215 (W.D.N.Y.2003) (no constitutional violation under Fourth, Eighth, or Fourteenth Amendments based on alleged violation of right to privacy arising from medical examination conducted while cellmate present).

The last set of miscellaneous claims are leveled at Correctional Officer Calise. Plaintiff alleges that Officer Calise made an inappropriate sexual comment, harassed him because of a

fishing line thrown from Plaintiff's cell, told Plaintiff he had too many family photographs, took paper given to Plaintiff by another officer to write to the Court, took hair products in retaliation for something that is not specified and said, "I will hurt you." ECF No. 1 at 24. None of these – whether viewed in isolation or together – alleges conduct amounting to a constitutional deprivation. Shabbaz v. Cole, 69 F. Supp. 2d 177, 199-201 (D. Mass. 1999) (verbal abuse, harassment and even threats do not rise to the level of cruel and unusual punishment).

Based on the foregoing, I recommend that the Court dismiss these miscellaneous claims against Lieutenant Sayles, Deputy Jankowski, Linn Diggins and Correctional Officer Calise in both their individual and official capacities. Because these are the only claims against Lieutenant Sayles, Linn Diggins and Correctional Officer Calise, I recommend that these Defendants be dismissed entirely from the case.

### IV.     Conclusion

Based on the foregoing, I recommend that Defendants' motion to dismiss (ECF No. 35) be granted in part and denied in part as follows:

> Granted as to all claims against Dr. Cerbo, Lynn Diggins, Officer Calise and Lieutenant Sayles, with the medical malpractice claim against Dr. Cerbo dismissed without prejudice;
>
> Granted as to the medical-treatment claims against Director A.T. Wall, Assistant Director Weeden and Captain Adams;
>
> Granted as to all Eighth Amendment claims against Defendants Director A. T. Wall, Director Weeden, Deputy Jankowski, Captain Adams, Warden Kettle, Officer Belisle, and Lieutenant Galligan, acting in their official capacities;
>
> Granted as to the claim of denying access to grievance procedures or the courts against Deputy Jankowski;
>
> Denied as to Eighth Amendment claims resulting from imposition of excessive and harsh solitary confinement against Defendants Director A. T. Wall, Assistant Director Weeden, Deputy Jankowski, Captain Adams, Warden Kettle, and Lieutenant Galligan, in their individual capacities;

Denied as to Eighth Amendment claims resulting from incident of November 23, 2016, against Officer Belisle and Lieutenant Galligan in their <u>individual</u> capacities.

Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days after its service on the objecting party. <u>See</u> Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision. <u>See</u> <u>United States v. Lugo Guerrero</u>, 524 F.3d 5, 14 (1st Cir. 2008); <u>Park Motor Mart, Inc. v. Ford Motor Co.</u>, 616 F.2d 603, 605 (1st Cir. 1980).


/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
February 12, 2018